upon a single proposition: If, upon its organization, under section 2 of the railroad law, the relator acquired a right to make the proof before the board "that public convenience and a necessity required the construction of the road as proposed in its articles of association," and to demand a certificate to that effect in the event that it did satisfy the board of that fact, an error has been committed by the board in the determination which it has made. Such determination ignores entirely such a right on the part of the relator. It proceeds upon the theory that an applicant appears before that board without any rights whatever; that, although it might prove to the entire satisfaction of the board all that section 59 requires it to prove, yet the certificate may be denied on some ground not specified in any statute, and of which the applicant could have no anticipation. Such a theory of the powers and duties of the board, under the provisions of section 59, is, in my judgment, altogether too broad. Upon the application of the relator to the board, it should have determined whether the road proposed in its articles of association was or was not a public necessity, without reference to the application of the Terminal Company; and, if only one road such as it proposed in such articles was necessary, the preference should have been given to it, rather than to the Terminal Company. The relator had acquired that right of priority over the other company, and the board erred in disregarding it.

For these reasons, I think the determination of the board awarding the certificate to the Terminal Company, and refusing it to the relator, should be annulled, with costs.
cur.

---

NEW YORK LUMBER & WOODWORKING CO. v. SEVENTY-THIRD STREET BLDG. CO.

(Supreme Court, Appellate Division, First Department. May 1, 1896.)

MECHANIC'S LIEN — ENFORCEMENT AGAINST PROPERTY FRAUDULENTLY TRANSFERRED.

Where the right to a lien exists, a conveyance of the property by the owner will not defeat the lien, if it appears that the conveyance was not bona fide.

Appeal from judgment on report of referee.

Action by the New York Lumber and Woodworking Company against the Seventy-Third Street Building Company, impleaded, etc. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

A. G. N. Vermilya, for appellant.
Herbert H. Gibbs, for respondent.

RUMSEY, J.   The action was brought to foreclose a mechanic's lien filed by the plaintiff or the 15th day of June, 1888, for building materials sold and delivered to William J. Merritt & Co., which were

furnished to and used by Merritt & Co. in the erection of 41 houses on Seventy-Third street, near West End avenue. The plaintiff alleged that 16 of these houses had been sold to the defendant, the Seventy-Third Street Building Company,· but that the transfer to them was in fraud of the creditors; and judgment was asked, among other things, that the conveyance from Merritt to the Seventy-Third Street Building Company be declared to be in fraud of creditors, and that the plaintiff have a lien upon the houses conveyed to that company, for the materials which were used and delivered there, and that those premises be foreclosed and sold to pay the amount of the lien. The referee directed a personal judgment against Merritt & Co. for the value of the property sold to them, and from that portion of his decision, and the judgment entered on it, no appeal has been taken. He also found that materials of the value of $1,244.51, out of those delivered to Merritt & Co. were delivered for and used in the 16 houses which had been conveyed to the Seventy-Third Street Building Company, and that the transfer by Merritt to that company of the property upon which those buildings stood was made with intent to defraud the plaintiff of his right to file a lien upon the said premises, and to make the lien ineffectual; and he directed judgment establishing a lien for the amount of $1,244.51, with interest, upon those premises, and directing that the premises be sold to pay it, and from that portion of the judgment this appeal is taken.

The 16 houses which were conveyed to the Seventy-Third Street Building Company, and which were held by the referee to be subject to the lien for materials which had been filed by the plaintiff, were situated on the northeast corner of West End avenue and Seventy-Third street. Upon that corner there were 18 houses which were in process of construction by Merritt & Co. Sixteen of these were conveyed to the defendant corporation. The referee finds that materials were furnished and used by the plaintiff for building those houses to the value of $1,244.51.

The first question is whether or not that finding is warranted by the evidence. The material making up this sum of $1,244.51 consists of sashes and blinds valued at $688.80, and ash ceiling and wainscoting valued at $310.79, and flooring valued at $244.92. It appears from the testimony, as has already been stated, that Merritt & Co. were constructing these 18 houses at one time; that these houses were all in one block, and were being constructed substantially in the same way, and were about in the same stage of completion. The sashes and blinds for these houses were special sizes, ordered particularly for them, and which could be used nowhere else. They were delivered at the houses, and, after they had been delivered and used, Holmes, a measurer in the employ of the plaintiff, was called upon to go to the houses and examine them, because of a complaint that had been made by Merritt that the sashes and blinds were not of the proper size. He says that he went through the houses; that the blinds were all hung, although all the houses had not reached the same stage of completion; that he measured the blinds, and he knows from the measurements that they were the blinds which had

been furnished by the plaintiff, because they were the same special sizes as had been ordered by Merritt for the houses in which they were put.   Eickhoff, who was a carpenter, and superintended the woodwork for Merritt & Co. in these houses, among others, at the time these blinds were delivered, testified that the blinds were all used for those houses.   The estimates for these blinds were made by one Rugg, who was in the employ of the plaintiff.   He testified that the value of the sashes and blinds estimated by him for each of the 18 houses was $43.05.   There was no dispute with regard to this evidence, nor was there any denial that the blinds were used in the houses as had been testified to by the plaintiff's witnesses.   All the evidence in that regard on the part of the defendant was given by Merritt, who says that he knew that sashes and blinds were bought from the plaintiff for use in these buildings, and that some of them may have been used in the buildings, but he did not know whether they were or not.   There was no doubt that Merritt & Co. had at hand, or knew where to obtain, testimony of witnesses who could have shown that the blinds were not used in these buildings as alleged by the plaintiff, if that had been the fact; and, as no such evidence was given, it is fair to infer, as the referee did infer, that sufficient proof had been given on the part of the plaintiff to warrant him in finding that in each one of the 16 buildings conveyed to the defendant corporation the blinds prepared for that building had been used.   The value of the blinds so used was $688.80, which is the amount allowed by the referee for that item.

The next item was $310.79 for ceiling and wainscoting which was delivered from January 27 to April 16, 1888.   The proof of the delivery of this material depends upon the testimony of Eickhoff, who was sworn as a witness on behalf of the plaintiff.   He receipted for it, and he says that the receipts were signed at the time they bear date; that all of the stuff went to the northeast corner of Seventy-Third street and West End avenue, and he does not think that any of it went to the south side.   He thinks it was all used in the same place, in these 18 houses.   This testimony was entirely uncontradicted.   The amount of this ceiling and wainscoting was $310.79. The referee charged the whole of this amount upon the 16 houses which had been conveyed to the defendant corporation.   In this we are inclined to think that the referee was in error.   It appeared that work upon all these houses was proceeding at the same time, and that they were substantially in the same stage of completion; and as the material was used in all the houses alike, according to the testimony of Eickhoff, we think the referee should have charged each house with its proportionate part of the ceiling and wainscoting, and that he should not have charged these 16 houses with the whole of it.   The amount properly chargeable to each house was $17.27, and the amount chargeable to the 16 houses which were conveyed to the defendant corporation was $276.32, which is the amount to be allowed to the plaintiff, as against those houses, for that item.   The proof of the flooring stands entirely upon the testimony of one Griffin, who says that he delivered the flooring to Merritt & Co.; but

he is unable to tell just where he delivered it, nor is there any evi-
.dence whatever that it was used in these particular houses.    For
that reason the flooring was not properly chargeable to these houses,
and the value of the flooring, which was $244.92, should also be
deducted from the amount which has been charged against the de-
fendant's houses.    The amount so to be deducted is $279.39, as of
the 23d day of May, 1888, and the judgment is to be modified so
that the amount of the lien which the plaintiff is held to have upon
the 16 houses conveyed to the defendant corporation shall be fixed
as $965.12, with interest thereon from the 23d of May, 1888,
instead of $1,244.51.    The lien was filed on the 15th day of June,
1888, and there is no question that some of these materials were
furnished within 90 days of that time.

We have examined the testimony tending to show that the trans-
fer of the property by Merritt to the defendant corporation was
made in fraud of creditors, and we are satisfied that the conclusion
of the referee upon that subject was correct.    When the right to a
lien has come to exist, a conveyance of property by the owner will
not defeat the lien, where it has been made to appear that the con-
veyance was not bona fide, and was made with intent to defraud
the person who was entitled to a lien; and the validity of the con-
veyance may always be tested in the action to test the lien.    Gross
v. Daly, 5 Daly, 540.    Within this case, the judgment establishing
the lien, as against the property sold to the defendant corporation,
was right.

We have examined the other points raised by the defendant's
counsel, and are satisfied that none of them were well taken.    The
result of our examination is that the judgment must be modified by
fixing the amount of the lien to which the plaintiff is entitled,
against the 16 houses conveyed by Merritt to the defendant, at
$965.12, as of the 23d of May, 1888, and as modified must be affirmed,
without costs.    All concur.